23 1648 23 1696 23 1697 23 1698 or argument not to exceed 15 minutes per side it is Andre Fenner et al versus General Motors LLC et al Mr. Berman for the plaintiffs appellants good morning may it please the court Steve Berman on behalf of the appellants I reserve three minutes for reply fine and this is the first of three appeals before this court the others are in the briefing process and they all raise the same issue and that is the right of frontline and the intended victims of a fraud their right to bring RICO claims and the ability of consumers who are also the frontline victims of a fraud to bring claims related to fraudulent statements about the performance of their vehicles under state law first as to RICO plaintiffs here are the intended and only victims of the fraud plaintiffs don't seek to assert pass on damages no one else but the plaintiffs have been defrauded the reasons behind the indirect purchaser rule that animated that rule namely pass through overcharges are simply not present here but the rules the rule you know I mean it is kind of just couched very directly isn't it in terms of it must be a direct purchaser and it's not really for us to revisit whether the reasons for the rule are present I mean the rule seems to be pretty categorical I don't think it is that crystal clear your honor I'll say that for the following reason first if you look at both the trial in your court and the subsequent Supreme Court decisions that have looked at this issue rather than relying any on any bright line rule they look at whether there was a derivative claim or a pass-through claim that's what the trial in your court looked at in fact if you look at the recent decision by this court in General Motors versus FCA 44 at 4548 which I submitted as a 28 J opinion I should have submitted earlier I apologize but the court there said quote in the Rico context proximate cause asked whether the alleged violation led directly to plaintiffs injuries and the court cited three different Supreme Court cases Anza Holmes and Phoenix bridge isn't that at a different stage that at the proximate clause stage whereas the question really is whether the Supreme Court cases like Apple V pepper totally bar hearing this well let's take Apple V pepper because in Apple V pepper what the court again talked about is whether we're talking about pass-through or derivative injuries and it found even though it did that a to B and B to C analysis it went on to look at is there a derivative injury here is there a pass-through injury and in fact in Apple the court said there could be two victims there were the developers who actually I wound up representing in a successful class action and the consumers and they both sued over the same purchase they both had different kinds of injuries so they allowed two different people to go forward what if you look at the at the rule the rule comes from Illinois brick and Illinois brick the entire thrust of that decision was to look at what happens when you have passed through and the complexities of the brick company deciding oh what do I do with this overcharge do I pass it on do I eat some of it you could have multiple plaintiffs in a situation like that and so the court said we're going to have a rule that you can't have duplicative recoveries you can't have more than one plaintiff that's not the case here there's only one plaintiff that can sue here that's the victims the consumers they were the only ones who the forward-looking advertising was directed to they don't automobile manufacturers don't advertise the dealers so the fraud here is in the advertisements and automobile dealers they don't have pass-through issues they get an allotment they take the cars and they sell them to consumers there's no pass-through issues we talk about your fraud claim pretty soon yes sir I don't want to truncate any questioning from the bench but I mean you're you're basically alleging that this is kind of a Volkswagen diesel style fraud is that right that's correct your feet device as you call it right well I would say more a a trick yeah I mean you call it a defeat defeat device in your brief yes right and but that the existence of this device was fully disclosed to the EPA correct we don't know that we know that they I thought there were 18 pages devoted to the dosing system in the submission for purposes of the certificate of compliance but we don't know if the EPA understood well that's kind of what but let's say they did understand I mean that's their I mean let's say it's their job and they understand they probably understand better than juries would okay let's say they understood right I don't think it matters okay why because the the first of all there's a couple reasons number one if you look at the Ford opinion which is right the district court I mean just to cut to the point and then you can talk it seems to me very much like you're trying to revisit the EPA's judgment about the propriety of what you're calling a defeat device it's fully disclosed to the EPA I think it's fair to assume that if the EPA thought it was a Volkswagen type device they would have reacted the same way they did with that device they chose instead to issue a certificate of compliance and so it seems to me that your claim is directly seeking directly to revisit the agency's judgment and actually substitute the agency's judgment with a jury's judgment which in turn seems to be squarely proscribed by Ford so I just want to be candid with you about my concern and let you speak to it let me address your concern twofold okay first I think the law is pretty clear that agency silence because the agency hasn't said anything about the proprietary of it issued a certificate of compliance but here's what it didn't say it didn't say for example that this lawsuit interferes with its regulatory powers right the court in the Hills say that in Ford either right it did not say that in Ford and yet it was you know but let me get to a more important point and that is this the agency is looking at the submission it got and it gave us a certificate of compliance you're correct the agency is not looking at what GM is telling consumers and that's the thrust of this case so the essence of your claim is that GM advertised to consumers that this was a better truck cleaner others cleaner truck you don't need to investigate what EPA did or didn't do you're saying it's the fraudulent advertising to consumers absolutely that's the thrust of the case and but there's a there's a baseline there's you know the idea is that it's emitting more than they expected right I mean and the baseline is kind of the expected emissions given the compliance with the testing regimen and so I mean it seems to me that the the testing regimen is just inescapably a part of the syllogism of your claim I disagree we could put on our case as the court originally noted the district court originally held you don't even have to prove regulatory non-compliance you still can prove that there was fraud on the consumers how would we prove that well our expert will come into court and he's already submitted reports saying here's how these cars operate in real life in real life when you're driving these cars they're they're doing a dosing scheme that means the cars aren't clean in fact not only are they are not clean they're dirty as all get out and that's not what the consumer would have expected when you're getting advertisements saying these are clean they turn diesel fuel into a quote fine mist consumers don't understand that the promised performance these cars are supposed to have great performance only comes because they turn off the emission system which allows performance to go forward if you have the emission system working fully you wouldn't have good performance none of that is benchmarked in any way shape or I mean if I understand correctly most if not all of your own name plaintiff clients in this case reference the the vehicle's certificate compliance with federal standards as their subjective expectation regarding diesel emissions I mean nobody walking around has a sense of what the NOX level number should be it's all gee I thought it complied with you know the the EPA said it was had had you know low compliant emissions and it turns out the EPA was tricked but the record that we also put in the brief is that the consumers the class plaintiffs also relied on the representations and understanding that this was clean clean cars and in fact there are experts on both sides that said GM's marketing to these consumers was about clean and green you're not arguing that any particular advertisement was fraudulent any particular misstatement oh yes we're alleging that all of those were fraudulent they either misrepresented the facts or the omitted material facts so if I'm promising that I'm turning diesel fuel into a fine mist that's good for the environment that's false that's not what you're doing if I'm promising you that these cars are the greenest trucks ever made that was false according to our allegations and you don't have a fraud on the EPA claim absolutely this is not a fraud on the EPA claim but you you argued I mean in the district court expressly argued that they lied to the agency that that they misrepresented things to the agency etc etc I mean this is a complete pirouette from what was argued in the district court it is not a pirouette we can use what they told the agency the lies we think they told the agency as motive as circumstantial evidence as to why would they told consumers was false and misleading it's the sine qua non here is the age the agency was misled and people think that their cars or their trucks meet the standards and you're saying de facto they don't if General Motors had not said a word to consumers about emissions and green and clean we'd have no claim because it would be just a misrepresentation to the EPA that would be a Buckman claim that's not what this case is about this case is about misrepresentations to consumers over which the EPA has no police authority there's a savings clause here that expressly provides for remedies like this what I'm sorry sir go ahead go ahead your what does the defeat device defeat it well it's your term you use throughout the brief it what's it defeating it defeats the operation of the catalyst so when you engage it when you don't put enough knocks excuse me enough death right then the knocks gets out of control and it's something that is engineered to have that occur outside of the testing regimen just like in Volkswagen right well it occurs in both so during the testing regimen they don't really dose right right outside of the allegation here is that this behaves one way during the testing regimen in another way in real life that's that's that's just the nature of that's only partially correct because in the testing regimen they're not concerned at all about what happens in real life they're testing and what happens on it in the laboratory I mean as I understood the allegation here and it's common to Volkswagen the defeat device is designed to behave one way in the testing regimen so and then and then to behave another way in real life in other words the testing regimen is just the centerpiece of this whole thing and it's like the testing regimen provides an assurance it's going to be have a certain level of emissions people rely upon that assurance the car can't be sold they have a vague sense you can't they tricked the testing regimen so now it's a lot dirty that I mean it's just inescapably at the heart of everything I beg to differ at the heart of everything is the false misrepresentations made that's I mean I understand that and as the Volkswagen add-on as the Volkswagen I sat in the room and negotiated the Volkswagen settlement with the EPA and the DOJ but they never said what are you doing here we don't have any power with settlement there was no adjudication and the EPA had actually stepped forward and said said what you're saying here which they conspicuously have not and so you're you're seeking to revisit their judgment in a way that was not happening in the Volkswagen case I see my time is up thank you thank you sir good morning your honors may it please the court J Lefkowitz for the appellees I want to begin if I may by just responding to two questions that judge Bloom Katz and judge Moore asked I think judge Bloom Katz you're exactly right that there are no affirmative misrepresentation claims in the case in the motion to dismiss response that they filed on pages 9 to 10 they said and I quote plaintiffs do not sue for common law fraud under the state law for affirmative misrepresentation and in the opinion at 22 the court noted that the plaintiffs disavowed any affirmative misrepresentations the issue for all the state law claims that are brought here the consumer protection claims do need a specific affirmative misrepresentation can there be like a deceptive practices or other ways to mislead even if any well there could be for example what we have here very clearly is an allegation of fraud by omission and that would be potentially cognizable but this is not to be clear a case where the advertisement said our trucks are cleaner than a Tesla and you could compare that and it would have no bearing on the EPA here the claim something like 60 70 times in their complaint they referenced the defeat devices and when we asked their expert what do you mean by a defeat device the expert said is there any definition of a defeat device that you're using in this report other than the one in the federal regulations and Mr. Smithers said no what they are and the reality here is a defeat device is actually unlawful but in AECD which is what the EPA test for is an auxiliary emissions control device which does precisely what it is supposed to do it is supposed to change the way the engine works in different conditions in order to protect the engine if you're at high altitude for example and you put your foot on the accelerator the EPA has to weigh the balance of NOx emissions and soot and ammonia and this is a careful balance that the EPA makes pursuant to their delegation from Congress if I were to accept your argument that the plaintiffs claims with respect to the fact that they're saying oh this doesn't meet the EPA standards this shouldn't have gotten a certificate of conformity you know if the EPA didn't like the AECD that they were using then that was that was the EPA's job to deal with does that mean that their other consumer claims are necessarily preempted as well it seems like they're advancing multiple theories here and it seems like some theories could very well be preempted but others are not your honor I think perhaps that may have been the basis for the denial of our motion to dismiss at the motion stage because at that stage the case could have gone in a lot of different directions and we weren't necessarily sure what the plaintiffs proof would be but now that we have the depositions of 46 of the plaintiffs and their expert reports the judge made very clear in his opinion that the plaintiffs in every one of the depositions have not identified a single emissions benchmark standard or metric other than the EPA standards that they say a reasonable consumer would care about that was the only thing that was at issue and their own experts their marketing experts said this is Ashley Humphries at page 30 of her opinion said based on the messaging by the company a reasonable consumer would believe that the vehicles complied with the emissions regulations this is essentially the same set of circumstances that this court dealt with in Ford and which the Supreme Court dealt with in Buckman remember Buckman itself was not a case initially brought by people who alleged an injury from bad bone screws because they wanted to claim fraud against the agency it was construed that way but it was originally a common-law fraud lawsuit brought in cases all around the country and litigated in an MDL in New Jersey because people said we were deceived we thought these were safe one of the allegations that I saw in the complaint in the briefing is that there were representations that these trucks were cleaner or had less emissions than counterparts perhaps gasoline counterparts did that just not bear out in any of the in in any of the discovery that that nobody actually had that perception not one of the plaintiffs testified and even more important than that because this is a class action and we have a reasonable consumer standard their experts did not testify that there was any reasonable expectation by any of the consumers that clean diesel meant anything other than compliance with the federal regulations and that's why just like in Ford any fraud committed on the consumers is a byproduct of the alleged fraud committed on the EPA one doesn't exist beside the other if there were statements that somebody looked at the ads the GM had and said oh this is a clean diesel truck I love the idea that clean diesel is going to be cleaner than gasoline that would be a state law fraud claim that would survive Ford is that correct actually that would be I think an affirmative misrepresentation claim which the judge actually found was not actionable because it would just be a statement of puffery but in any event beyond that I could imagine certain types of statements like the one I led with our trucks are cleaner with emissions than a Tesla and you could test that and you could test that in a laboratory and you have no reason to look to the EPA regulations the reason this lawsuit is all about the EPA regulations the EPA emissions standards the allegations of defeat devices which the EPA tested for and then stamped and required that the certificate be stamped and published on the engine block of every vehicle that it complied is because the EPA has the authority to make these judgments and so I'm not suggesting that in theory theoretically there couldn't be some claim that could be brought not every consumer fraud case raising any conceivable issue is preempted I think we have to look at what the allegations are and now with a full summary judgment record we have to look at what the proof is here but again this case starts and ends with the allegations and the complaints paragraph 26 had GM disclosed that the design violated federal law paragraph 4 these vehicles exceed the federal standards and employ defeat devices that's what this case is about and this is clearly a collateral attack challenging the judgment of the agency just as much as the challenge in Buckman which frankly may well have been a valid claim these people were clearly injured by by a bad bone screw but in order to prevail they had to call into question the FDA's considered policy judgment and federal agencies get discretion here they have enforcement discretion the way all law enforcement have disgruntled enforcement discretion so not only does the EPA here have to balance the risks of harm to the engine block and to the environment from certain ammonia on the one hand and knocks on the other but then they have to decide how to penalize and if they want they can order recalls which would frankly go directly to the plaintiffs if there are no other questions on the fraud aspects I want to just address the other arguments that the plaintiffs have made but I'm happy to take any more questions on this question is for that but can you explain maybe the similarities or difference of how the kind of the numbers or the approval that the EPA did in Ford matches or is different from the certificate of compliance here my understanding and Ford at least to some you know the EPA you know gives you a you know a check mark for a number for a fuel efficiency amount and then you have to put that amount you know on the vehicle that's what you tell the consumers and the case wasn't about you know maybe other things that were told to the consumers or things like that here okay there's certificate of compliance maybe your your counterpart was challenging that they've seemed to drop that somewhat but now they're talking about all these other misrepresentations or alleged misrepresentations outside of outside of that so again they're they're actually talking about omissions here because they've withdrawn the the misreps and that's important your honor because in Ford there were also omissions fraud claims and the omissions fraud claims were rejected on Buckman grounds by this court just the same as the Mulroney sticker related issues and that's because in both cases Ford in here the allegation is that the auto companies cheated on a government test in one case to get a false miles per gallon number in the other to get an improper certificate of compliance the specific number isn't relevant in the sense that the government doesn't have to publish a statement in order to qualify for obstacle preemption under fraud on the agency what's relevant is that the challenge can't be to the agency's judgment but frankly even if preemption somehow depended on an affirmative statement that was published here we do have the agency's affirmative statement in the COC that is required to be placed in the vehicle if I can just make a couple points on the first argument on the indirect purchaser first of all in Apple the consumers were allowed to sue because Apple was a retailer the consumers were direct purchasers the 28 J letter that was submitted last night did not involve indirect purchasers at all it involved two companies who were at issue in a bid rigging claim and there was no indirect purchaser and it was simply a decision turning on proximate cause they didn't even address statutory standing I think there were a valid claim which I understand you're arguing there isn't but suppose there were would the indirect purchaser rule application here mean that no one could sue no in in fact your honor well the dealers could certainly sue and in fact mr. Berman that the dealers would be suffering well the ledge mr. Berman brought a lawsuit against VW it is at 842 federal appendix 112 it's a four-circuit case in 2021 and there was a trial court case that went before judge Breyer Charles Breyer he brought a case alleging that the dealers and VW conspired and in that situation it's an entirely different story that's a co-conspirator correct so if there if the dealers weren't conspiring with GM would the indirect purchaser rule still mean then that no one could sue if hypothetically there was a valid claim here sorry your honor I apologize I'm corrected in that case the dealers themselves were suing and dealers can sue and have sued before and mr. Berman represented the dealers in suing so there would be an opportunity why would a dealer in this case in this hypo that that I'm giving you why would a dealer have any incentive to sue I'm I'm concerned that absent a co-conspirator applying the indirect purchaser rule would mean that there could never be Rico claims even though there could have been a Rico violation so first of all I didn't represent the dealers I don't know why they brought the lawsuit there but certainly dealers can feel aggrieved in the very complaint in this lawsuit the allegation is that General Motors defrauded not only the consumers but the dealers now but but to follow up your honor the Supreme Court has actually addressed the policy question that lies I think at the root of of what you're asking me in a case called Kansas versus Utilicorp 597 US 9199 the court was dealing with a situation where plaintiffs were alleging that utilities were required by law to pass on a hundred percent of the overcharge so a hundred percent of the overcharge was going to be passed on and the Supreme any economic assumptions underlying the indirect purchaser rule might be disproved in a specific case we will not change this rule it would be unwarranted the dealers in that case claimed that you know they couldn't sell the cars because they lost goodwill because they were buying from a fraudster that's what the case was about there and in this situation if the claims were to be dealers might have that same kind of claim and there are other claims that plaintiffs could bring against General Motors for example under RICO not for economic loss but if they alleged for example harm to property if they alleged that these vehicles were creating emissions and harming their property that might lie with a RICO claim that there would not be subject to the indirect purchaser bar there but the Supreme Court has made clear as recently as the Apple case that this is an absolute bright-line test the Sixth Circuit in Trollinger made clear that it applies directly to RICO as have the other circuits that have addressed that application to RICO and the Sixth Circuit made clear that it applies to RICO because Congress modeled the RICO statute after the antitrust laws and the doctrine of privity of contract within its heyday at the time and therefore plaintiffs have to have a direct contractual relationship with the defendant to file the lawsuit again I recognize this is a policy choice but but it's the policy choice the Supreme Court has made thank you thank you your honor may it please the court let me start with your question judge more about the dealers and I'm a bit surprised that my learned colleague brought that case up because I lost why did I lose the Ninth Circuit and the cases cited in the briefs rule that the the dealers were not defrauded the consumers were the only ones defrauded the dealers had a different claim their claim according to the Ninth Circuit arose when the discovery of the fraud came out and the public was outraged about Volkswagen and there was a cessation of the ability of dealers to sell your opponent on the other issue here has emphasized the evidence that he says focuses on failure to meet EPA standards who would you point us to in terms of deposition or other evidence that shows that it's an independent claim independent of the failure or alleged failure to meet EPA standards yes your honor I would focus you on page 6 of our reply brief where we cite the testimony of the plaintiffs that they believe their vehicles were quote clean diesel and they did not expect their trucks to be designed to limit emissions during real-world driving that's it in a footnote 16 we summarize the evidence of the name plaintiffs in that regard it's not surprising that the plaintiffs had more than one expectation that an expectation that Jim would comply with the law and they had an expectation that their cars would not have an emission system that turned off in real-world driving and it's that expectation that is at the heart of this case isn't I mean isn't the reality that the expectation about real-world driving is that the vehicle behaves similarly then to the testing it's just you know the testing is supposed to approximate that and so if it behaves radically different differently in the in the real real world it's you know by comparison to what it's doing in the testing I think the expectation is that General Motors and Bosch would not make marketing statements about the performance of their vehicles that were misleading and so at page 14 of our brief we cite for example the Bosch marketing strategy which was to tell consumers and create a market for clean vehicles so what distinguishes this case from the Ford case that you mentioned Judge Blomkast is that you're right in the Ford case what animated the court was that the EPA figures were EPA the representations that are at issue in this case and the omissions that are at issue spring from General Motors statements not any statement by the EPA and that distinguishes this case and why it's not preempted I see my time is up I thank the court for your courtesy this morning thank you thank you thank you both for your argument the case will be submitted